IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANTHONY R. JOHNSON, SR., *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | |
| § | Civil Action No. 4:24-cv-686-O |
| TARRANT COUNTY, TEXAS, *et al.*, § | |
| § | |
| Defendants. § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following Motions to dismiss filed by Defendants (1) Tarrant County, Texas, ECF No. 45; (2) Jevon Stubbs and Steven Gil, ECF No. 59; (3) Kyle Longo, ECF No. 72 (4) David Pitcock and Robert Russ, ECF No. 62 and (5) Kimberly Nobles, ECF No. 81 (collectively, "Movants"). The Court, having considered the motions, the responses of Plaintiffs, Anthony R. Johnson, Sr., Jacqualyne Y. Johnson, and the Estate of Anthony Johnson, Jr., the replies, the record, and applicable authorities, concludes that the Motions should be **GRANTED**.

**I.   BACKGROUND**[1]

The operative pleading is Plaintiffs' Second Amended Complaint.[2] Plaintiffs allege: Anthony R. Johnson, Jr., age 31, was a Marine veteran who suffered from schizophrenia. On April 20, 2024, he was booked into the Tarrant County Jail. He stood 5'4" and weighed 165 pounds. Defendants Simmons, Caldwell, Marez, Nymoen, and Moody started an altercation with Johnson and forcefully removed him from his jail cell. They physically attacked him and threw him onto the floor. They repeatedly punched and kicked him and positioned themselves on top of him.

---

[1] At the Rule 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).
2 Pls.' Second Am. Compl. ECF No. 39.

Defendants Simmons and Moody discharged pepper spray directly into Johnson's mouth multiple times, causing him to choke and struggle to breathe. After Johnson was handcuffed and in a prone position, Defendant Moreno, who weighs over 300 pounds, put his full body weight on Johnson's back and neck, preventing him from moving and/or breathing. Defendants Marez and Nymoen held Johnson down. Johnson told jailers he could not breathe but no one intervened. Once Johnson was no longer responsive, Defendants Longo and Russ placed him in a wheelchair but did not provide medical attention. Johnson died and the Tarrant County Medical Examiner ruled the death a homicide by mechanical and chemical asphyxia.

Plaintiffs assert claims against Defendants Moreno, Simmons, Marez, Nymoen, Caldwell, Moody, Nobles, Hollie, Sanchez, Stubbs, Gil, Longo, Pitcock, and Russ for violation of Johnson's Fourth and Eighth Amendment right to be free from excessive force and to be provided medical care. They assert claims against Tarrant County under the Fourteenth Amendment for unconstitutional use of force policies, for failure to train jailers to avoid using deadly force, for failing to supervise or discipline jailers, for failing to have a policy to provide adequate medical care, for a policy of deliberate indifference to medical needs, for failing to train employees to provide adequate medical care, and for failure to supervise employees to ensure adequate medical care. Movants maintain that Plaintiffs have failed to sufficiently plead plausible claims against them.[3] The individual Movants allege that Plaintiffs have not pleaded sufficiently to overcome their entitlement to qualified immunity.

---

[3] In addition to addressing the constitutional claims, Tarrant County asserts that Plaintiffs cannot recover for "loss of life" damages, punitive damages, or state law claims. Tarrant County's Mot. Dismiss, ECF No. 45. Plaintiffs do not disagree. Pls.' Resp. to Tarrant County, ECF No. 84.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). *Id.* at 676; *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020).

To survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its

3

judicial experience and common sense." *Id.* Dismissal is appropriate under Rule 12(b)(6) if "the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

### B. *Monell* Liability

A governmental entity, such as Tarrant County, can be subjected to monetary damages or injunctive relief only if one of its official policies caused a person to be deprived of a federally protected right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Tarrant County cannot be held liable under a theory of *respondeat superior* or vicarious liability. *Id.* Instead, liability may be imposed against a local governmental entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (quoting *Monell*, 436 at 692) (internal quotation marks omitted). To hold Tarrant County liable under § 1983 thus requires Plaintiffs to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." *Spiller v. City of Texas City Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citations omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

Violations of a pretrial detainee's constitutional rights under the Fourteenth Amendment are analyzed as either conditions of confinement cases or episodic act or omission cases. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). A condition of confinement case is an attack on the general conditions, practices, rules, or restrictions of pretrial confinement. *Id.* In an episodic act or omission case, the "complained-of harm is a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality." *Id.* (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). The standard of causation is the same: a policy or custom must be the moving force behind the violation. *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020). A plaintiff may plead both alternative theories and the court will evaluate them separately. *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 464 (5th Cir. 2015).

### C.     Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable

5

official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### D.     Deliberate Indifference

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires the plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.[4] *See Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (deliberate indifference not established when medical records indicated that plaintiff was afforded extensive medical care); *Nunley v. Mills*, 217 F. App'x

---

[4] The cases cited by *Gobert* do not explain what such exceptional circumstances might be. Whether to provide additional treatment is a classic example of a matter for medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

8

322, 324 (5th Cir. 2007) (delays, minor lapses, and prescribing wrong medication are insufficient to state a claim for deliberate indifference).

### III. ANALYSIS

#### A. Tarrant County

Plaintiffs say that they are alternatively alleging that Tarrant County is liable under the conditions-of-confinement rubric and the episodic-acts-or-omissions rubric. As the County notes, however, Plaintiffs consistently plead that Johnson died as a result of the conduct of "multiple jailers at the Tarrant County Jail."[5] The Court is not persuaded that this is a "conditions-of-confinement" case. Conditions cases usually concern "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633–34. *See Scott v. Moore*, 114 F.3d 51, 53 & n.2 (5th Cir. 1997) (number of bunks in a cell or television or mail privileges). A condition may, in some cases, reflect a *de facto* policy, "as evidenced by a pattern of acts or omissions," but in such cases the plaintiffs' claims do "not implicate the acts or omissions of individuals but the jail's system of providing [] care." *Estate of Henson*, 795 F.3d at 463. In other words, in a conditions case, no single individual's error actually caused the harm. *Id.* Rather, "the conditions themselves constitute the harm . . . regardless of any individual's act or omission." *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *8 (5th Cir. June 26, 2024).

Clearly, that is not the case here. Plaintiffs fail to identify any condition that caused Johnson's death. Rather, the death occurred as a result of the interposition of the individual Defendants. As in *Garza,* Plaintiffs' "conditions theory is an effort to fit a square peg into a round

---

[5] Pls.' Second Am. Compl. ¶ 1 *et seq*, ECF No. 39.

hole." 922 F.3d at 633. *See Anderson v. Dallas Cnty.*, 286 F. App'x 850, 858 (5th Cir. 2008) (the Fifth Circuit does not permit plaintiffs to conflate claims concerning a prison official's act or omission with a condition-of-confinement claim). *See also Sanchez v. Young Cnty.*, 956 F.3d 785, 792 (5th Cir. 2020) (failure to train cases fall under the episodic act or omission rubric).

To establish an episodic-act case, Plaintiffs must show: "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634 (citations omitted). Tarrant Count accepts for the sake of argument that the first element is met.[6] With regard to the second element, Plaintiffs refer to the laundry list of alleged deficiencies mentioned in paragraphs 105 and 106 of their second amended complaint,[7] which they maintain are sufficient to meet the pleading requirements.[8] Their shotgun approach violates the notice-pleading standard of FED. R. CIV. P. 8. *Alexander v. S. Health Partners, Inc.*, No. 3:22-CV-0395-X, 2023 WL 3961704, at *3 (N.D. Tex. June 12, 2023). Listing a series of adversarial conclusions does not meet the test. *Piotrowski*, 237 F.3d at 581. Plaintiffs must comply with *Iqbal* and *Twombly*. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015).

Plaintiffs' allegations are nothing more than boilerplate that does not apprise Tarrant County of their claims against it. For example, they allege:

> For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Johnson's constitutional rights:
> (a) The inadequacy of TCSO's policies, training, supervision, or discipline relating to the use of deadly force;

---

[6] Tarrant County's Reply 6, n.1, ECF No. 98.
[7] Pls.' Second Am. Compl., ECF No. 39.
[8] Pls.' Resp. to Tarrant County's Mot. Dismiss 15–17, ECF No. 84.

>       (b) The inadequacy of TCSO's policies, training, supervision, or discipline relating to the use of non-lethal control devices and tactics;
> . . .
>       (h) Lack of training regarding effective communication with inmates while giving them commands and determining their compliance;
>       (i) Lack of training regarding inmates with mental illness; [9]

As was the case in *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011), these conclusory allegations are insufficient. *See Ratliff v. Aransas Cnty.*, 948 F.3d 281, 284–85 (5th Cir. 2020) ("*Monell* pleadings must contain sufficient factual matter").

Plaintiffs allude to written policies as being facially unconstitutional,[10] but they never identify what the alleged policies are or state how they are facially unconstitutional.[11] As for the alleged unwritten policies or customs, Plaintiffs fail to allege "specific facts [that are] similar to the case at hand." *Johnson v. Harris Cnty.*, 83 F.4th 941, 946–47 (5th Cir. 2023). Instead, they rely on allegations made in an earlier condition case where a suicidal, noncommunicative woman kept unsupervised in a single cell gave birth to a child who died.[12] The facts alleged there were tailored to the case. Here, that twenty-one inmates died in the Tarrant County Jail in 2020 does not establish any pattern or practice relevant to this lawsuit.[13] Nor does the list of "suspicious deaths" occurring mostly in 2019 and 2020, or deaths in 2021 where inmates were found dead in their cells, or a death in 2024 that may or may not have been related to fentanyl found in the same housing unit.[14] *See Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) ("hodge-podge of unrelated

---

[9] Pls.' Second Am. Compl. ¶ 105, ECF No. 39.
[10] *Id.* at ¶ 93.
[11] Pls.' Resp. to Tarrant County's Mot. Dismiss, ECF No. 84.
[12] Pls.' Second Am. Compl. ¶ 57, ECF No. 39 (referring to *Congious v. City of Fort Worth*, 690 F. Supp. 3d 571 (N.D. Tex. 2023)); Pls.' Resp. to Tarrant County's Mot. Dismiss 20–21, ECF No. 84.
[13] Pls.' Second Am. Compl. ¶ 57.i, ECF No. 39.
[14] *Id.* ¶ 57.ii–.xxvi.

allegations" is insufficient), *cert. denied*, No. 24-398, 2024 WL 5011727 (Dec. 9, 2024); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."). One instance of the use of pepper spray on an inmate who died in 2019[15] does not create a pattern. *See Hernandez v. Dallas Cnty. Sheriff*, No. 3:23-CV-1583-E, 2024 WL 4202381, at *8 (N.D. Tex. Sept. 16, 2024) (citing cases reflecting that the Fifth Circuit has repeatedly required more than five sufficiently similar prior incidents to establish a pattern).

Plaintiffs allege that Tarrant County should be held liable on a theory of ratification of the individual Defendants' acts.[16] The contention is that *post hoc* ratification of the Sheriff in failing to discipline the individual Defendants constitutes policy for which Tarrant County can be held liable.[17] They have not pleaded facts to show that Tarrant County had a policy or custom of ratification. And they admit that Defendants Garcia and Moreno were terminated from County employment and indicted for murder.[18] A single instance of ratification may be enough if the fact situation is extreme enough. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). *But see Fraire*, 957 F.2d at 1278–79 (custom or policy of authorizing or encouraging misconduct cannot be inferred from isolated decision not to discipline an officer for a single incident of illegality). However, the plaintiff must show that the policymaker both "approv[ed the] decision *and the basis for it*." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 795 (S.D. Tex. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the

---

[15] *Id.* at ¶ 58.
[16] *Id.* at ¶¶ 109–20.
[17] *Id.* at 21–23.
[18] *Id.* at ¶ 5.

basis for it, their ratification would be chargeable to the municipality because their decision is final.") (emphasis added). To determine whether such a case has been made, courts compare the facts before them to the facts of *Grandstaff*. *Hobart*, 916 F. Supp. 2d at 796 (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009); *Peterson*, 588 F.3d at 848; and *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986)). Making a similar comparison here, Plaintiffs have not pleaded facts to show that the authorized policymaker, the Sheriff, approved both the outcome and the reasons for the actions that led to it. Although he may have initially defended the jailers based on their version of what happened, he did fire Moreno and Garcia, alleged to be the supervisor in charge of the jailers. *See Coon*, 780 F.2d at 1161 (precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy"). It may well be that he attributed the conduct of the jailers to Garcia. Because the facts pleaded do no more than permit the court to infer the possibility of misconduct, Plaintiffs have not stated a claim for ratification. *Iqbal*, 556 U.S. at 679.

### B.    Individual Defendants

Plaintiffs assert claims against the individual Defendants for use of excessive force and for deliberate indifference to serious medical needs.[19] Included in the medical care allegations is a claim that Defendant Garcia is liable for failure to intervene "either as the[] supervisor or a bystander."[20]

---

[19] *Id.* at 39, ¶¶ 81–90, ¶¶ 168–86.
[20] *Id.* ¶¶ 181–86.

Plaintiffs allege that their causes of action against the individual Defendants based on use of excessive force arise out the Fourth and Eighth Amendments[21] and that their causes of action based on medical needs arise out of the Eighth and Fourteenth Amendments.[22] Of course, the claims of a pretrial detainee arise out of the Due Process Clause of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Plaintiffs do not have claims arising out of the Fourth and Eighth Amendments.

In their responses to the various motions to dismiss, Plaintiffs admit that they do not contend that what they have pleaded is true. For example, they clearly plead:

> Defendants Moreno, Simmons, Marez, Nymoen, Caldwell, Moody, Nobles, Hollie, Sanchez, Stubbs, Gill [sic], Longo, Pitcock, and Russ, without justification and the need to do so, forcefully wrested Johnson to the ground where they punched and kicked Johnson and slammed his head to the ground.[23]

The entire section of the complaint regarding excessive force refers to the excessive force used by those Defendants.[24] Yet, they now concede that they do not contend that Defendants Pitcock and Russ, Longo, Nobles, Stubbs and Gil used excessive force. Instead, they contend that they have pleaded claims of supervisor or bystander liability against them based on the use of excessive force.[25] However, such a claim is not included in the excessive force section of the second amended complaint[26] or separately. Nor did they plead a claim for supervisor or bystander liability against them based on denial of medical care.[27]

---

[21] *Id.* at 37
[22] *Id.* at 63.
[23] *Id.* at ¶ 83.
[24] *Id.* ¶¶ 81–90 *passim*.
[25] Pls.' Resp. to Pitcock and Russ's Mot. Dismiss 3, 8, ECF No. 96; Pls.' Resp. to Longo's Mot. Dismiss 3, 8, ECF No. 95; Pls.' Resp. to Nobles's Mot. Dismiss 3, 8, ECF No. 99; Pls.' Resp. to Stubbs and Gil's Mot. Dismiss 3, 8, ECF No. 97.
[26] Pls.' Second Am. Compl. ¶¶ 81–90, ECF No. 39.
[27] *Id.* ¶¶ 181–86; The Court notes that Defendant Garcia is the only person alleged to be a supervisor. *Id.*

Even had Plaintiffs pleaded claims for bystander liability against the individual Movants based on excessive force, they have not sufficiently pleaded facts to state plausible claims against them. Although the complaint refers to "Defendant Jailers" multiple times, it never defines the term.[28] Logically, it would refer to those present on the scene, but the complaint never identifies the individual Movants as being on the scene of the fight or use of pepper spray or Moreno's kneeling on Johnson. The fact section, which is titled "Anthony Johnson, Jr.'s encounter with the Defendant Jailers," says that Defendants Simmons, Caldwell, Marez, Nymoen and Moody started an altercation, forcefully removed Johnson from his cell, and physically attacked him and threw him to the floor.[29] Simmons and Moody discharged pepper spray into Johnson's mouth.[30] The individual Movants are not identified as having witnessed these things. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (liability will not attach if the officer was not present). That they happened to be clocked in at the jail, as is apparently the reason for naming them in the complaint, is not enough to support a claim. *Martinez v. N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021).

Plaintiffs allege that they have stated a plausible claim for denial of medical care against Pitcock and Russ, Longo, Nobles, and Stubbs and Gil based on their conclusory allegations that once Johnson "was no longer responsive, Defendants Longo and Russ placed [him] motionless [] in a wheelchair but did not otherwise attempt to provide him with the necessary medical attention," they did not "once try to perform any lifesaving procedures," and they "knew something was

---

at ¶ 44, ¶ 181.
[28] *See generally* Pls.' Second Am. Compl., ECF No. 39.
[29] *Id.* ¶ 42.
[30] *Id.*

15

seriously wrong . . . but did absolutely nothing to assist."[31] That Russ and Longo put Johnson in a wheelchair is taking some action, whether it was negligent or not.[32] That the others saw Johnson placed in a wheelchair[33] and did nothing else does not establish that any of them was deliberately indifferent. *Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016). Plaintiffs have not pleaded any facts to show that these Defendants were aware of a serious medical need that they could have alleviated but chose not to. Deliberate indifference cannot be inferred from a failure to act reasonably. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) (citing *Hare*, 74 F.3d at 649). Nor have Plaintiffs cited any case where an officer acting under similar circumstances was held to have violated an inmate's constitutional rights. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018); *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016).

As before, Plaintiffs have not alleged a claim of bystander liability against the individual Movants as to the medical claims. The only claim in that regard is as to Defendant Garcia.[34] Even if such a claim had been pleaded, bystander liability requires that (1) the officer know that a fellow officer is violating an individual's constitutional rights; (2) the officer has a reasonable opportunity to prevent the harm; and (3) the officer chooses not to act. *Whitley v. Hanna*, 726 F.3d at 646. The Court must consider each officer's individual role in the alleged events to determine whether a claim has been stated. *Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006); *Ibarra v. Harris Cnty.*, 243 F. App'x 830, 835 (5th Cir. 2007). Deliberate indifference cannot be shown through

---

[31] Pls.' Resp. to Pitcock and Russ's Mot. Dismiss 11, ECF No. 96; Pls.' Resp. to Longo's Mot. Dismiss 4, ECF No. 95; Pls.' Resp. to Nobles's Mot. Dismiss 4–5, ECF No. 99; Pls.' Resp. to Stubbs and Gil's Mot. Dismiss 4–5 ECF No. 97.
[32] Plaintiffs appear to recognize this: "[S]ome jailers thought enough of Johnson's condition to place Johnson in a wheelchair." Pls.' Resp. to Nobles's Mot. Dismiss 3, ECF No. 99.
[33] In fact, Plaintiffs have not identified the Defendants who allegedly saw Johnson being placed in a wheelchair. Pls.' Second Am. Compl. ¶ 46, ECF No. 39.
[34] Pls.' Second Am. Compl. ¶¶ 181, 186, ECF No. 39.

the actions of a cumulative group; each defendant is entitled to know what he or she did that is asserted to be wrongful. *Martinez*, 846 F. App'x at 243. Thus, the Court disregards "bare assertions of collective responsibility, unsupported by concrete factual allegations." *Id.* Here, there are no factual allegations as to the particular involvement of any of the individual Movants to support a claim of bystander liability.[35]

## IV. LEAVE TO AMEND

In each response to the motions to dismiss, Plaintiffs contend that they have sufficiently pleaded. If the Court believes the complaint to be deficient, Plaintiffs urge the Court to grant them leave to amend. Indeed, leave to amend should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2). In this case, justice does not so require. Plaintiffs have already twice amended their complaint, repeatedly failing to cure its deficiencies. More importantly, they do not suggest the particular grounds on which amendment is sought, FED. R. CIV. P. 7(b)(1)(B), or provide the document they seek leave to file. LOCAL CIV. R. 15.1. If Plaintiffs do not understand why they need to amend, any attempted amendment would be futile.

## V. CONCLUSION

For the reasons discussed, the motions to dismiss (ECF Nos. 45, 59, 62, 72, 81) are **GRANTED** and Plaintiffs' claims against Movants are **DISMISSED**. The Court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against Movants.

**SO ORDERED** on this **7th day** of **February, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[35] Longo and Russ were not bystanders; rather, they are alleged to have placed Johnson in a wheelchair. *Id.* at ¶ 46.